**Case No. 25-384**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
*Appellants*,

*v.*

FOOD & WATER WATCH, INC., et al.,
*Respondents*.

On Appeal from the United States District Court
for the Northern District of California
Honorable Edward M. Chen
Case No. 3:17-cv-02162-EMC

**BRIEF OF AMICUS CURIAE
AMERICAN FLUORIDATION SOCIETY, INC.
IN SUPPORT OF APPELLANTS AND REVERSAL**

| | |
|---|---|
| Jeffrey H. Wood | Cathy R. Silak, ISB No. 3118 |
| Acting Assistant Attorney General | Stephen R. Thomas, ISB No. 2326 |
| U.S. Department of Justice | HAWLEY TROXELL ENNIS & |
| Environment & Natural Resources Division | HAWLEY LLP |
| Norman L. Rave, Jr. (D.C. 431602) | 877 W. Main Street, Suite 200 |
| Environmental Defense Section | P.O. Box 1617 |
| 601 D Street, NW, Suite 8000 | Boise, ID 83701-1617 |
| Washington, DC 20004 | Telephone: 208.388.4887 |
| Telephone: (202) 616-7568 | Email: csilak@hawleytroxell.com |
| Email: norman.rave@usdoj.gov | sthomas@hawleytroxell.com |
| | |
| *Attorneys for Appellants* | *Attorneys for Amicus Curiae American Fluoridation Society, Inc.* |

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amicus* states that it is a nonprofit corporation. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Dated: July 24, 2025.

        HAWLEY TROXELL ENNIS & HAWLEY LLP

        */s Cathy R. Silak*
        Cathy R. Silak, ISB No. 3118
        *Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

        HAWLEY TROXELL ENNIS & HAWLEY LLP

        */s Stephen R. Thomas*
        Stephen R. Thomas, ISB No. 2326
        *Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

# TABLE OF CONTENTS

Page

Corporate Disclosure Statement ...................................................................................i

Table of Authorities ................................................................................................. iii

Interest of *Amicus*.....................................................................................................1

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................2

I.　The Studies Relied Upon By Respondents Utilize Urinary Fluoride, a Scientifically Unreliable and Invalid Biomarker. .....................3

II.　Numerous Studies Referenced by Respondents Are Also Limited By Flawed IQ Measurement Methodologies. ...............................4

III.　The District Court Erred In Suggesting Fluoride's Potential Hazard Is Undisputed, While Overlooking Robust Evidence Contradicting Respondents' Claims. .........................................................5

IV.　The District Court Incorrectly Relied Upon a Dubious NTP Monograph, Not Independently-Peer-Reviewed. ........................................7

V.　The American Fluoridation Society Believes Community Water Fluoridation is Necessary to Promote the Health of Americans. ................9

CONCLUSION .......................................................................................................11

CERTIFICATE OF COMPLIANCE.....................................................................12

CERTIFICATE OF SERVICE ..............................................................................13

## TABLE OF AUTHORITIES

**Page**

**Related Authorities**

Findings of Fact and Conclusions of Law, Case No. 17-cv-02162-EMC, DKT 445, at 3 ...................................................................................................................6

Pub. L. No. 114-182, 114th Congress (Frank R. Lautenberg Chemical Safety for the 21st Centruy Act); 15 U.S.C. § 2601 et al .......................................................2

**Research Reports**

Jonathan M. Broadbent, et al., *Community Water Fluoridation and Intelligence: Prospective Study in New Zealand,* American Journal of Public Health, Vol. 105, No. 1 (2015) ..................................6

Juliet R. Guichon, et al., *Flawed MIREC fluoride and intelligence quotient publications: A failed attempt to undermine community water fluoridation*, Community Dentistry and Oral Epidemiology (2024) ..........................................5

L.G. Do, et al., *Early Childhood Exposures to Fluorides and Child Behavioral Development and Executive Function: A Population-Based Longitudinal Study*, Journal of Dental Research, Vol. 102(1) 28-36 (2023) .........................................6

L.G. Do, et al., *Early Childhood Exposures to Fluorides and Cognitive Neurodevelopment: A Population-Based Longitudinal Study* (2025) ...................7

*World Health Organization's 2014 Basic Methods for Assessment of Renal Fluoride Excretion in Community Prevention Programmes for Oral Health* (2024) .........................................................................................................3

iii

## INTEREST OF *AMICUS*

*Amicus* American Fluoridation Society, Inc. ("AFS") is a non-profit public-health organization dedicated to aiding communities nationwide that benefit from the effective and safe public health measure of community water fluoridation, or areas where optimally fluoridated water naturally exists, to prevent dental decay and aid whole body health. *Amicus* is comprised of the nation's leading experts in community water fluoridation and dental medicine providers. This brief is supported by the declarations of Dr. Johnny Johnson, Jr. and Dr. James A. Dickinson, filed concurrently herewith. No party's counsel authored this brief in whole or in part. No party or a party's counsel contributed money that was intended to fund preparing or submitting this brief. No persons, other than *Amicus* and its members, contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION

This is a critical case for the oral health of Americans nationwide. An incorrect decision will significantly reduce oral health outcomes nationwide given that community water fluoridation ("CWF") significantly reduces dental decay. *Amicus* believes that the most accurate scientific data regarding drinking water fluoridation levels support the current water fluoridation levels recommended by the U.S. Public Health Service. *Amicus* also supports the Maximum Contaminant Level ("MCL") and the Secondary Maximum Contaminant Level ("SMCL") of naturally occurring

1

fluoride in water as set by the Environmental Protection Agency ("EPA"). Water fluoridation is effective, safe, and necessary for the health of communities nationwide. *Amicus* respectfully requests that this Court reverse the district court's Judgment.

## ARGUMENT

Respondents did not meet their burden under the Amended Toxic Substances Control Act ("TSCA")[1], which requires proof by a preponderance of the evidence that the fluoridation of drinking water at levels typical in the United States poses an unreasonable risk of injury to the health of the public, because their claim rests on flawed scientific studies that fail to accurately measure both fluoride intake ("exposure") and cognitive outcomes. The key studies cited by Respondents (1) use a biomarker that is widely recognized as unreliable, urinary fluoride, and (2) utilize flawed intelligence quotient ("IQ") assessment methods and reported results that fall within the margin of error.

To accurately establish causality as between fluoride exposure and IQ status, valid and accurate measures of both exposure (fluoride intake) and outcome (IQ measurement) are essential. Respondents' cited evidence fails to meet this basic

---

[1] *See* Pub. L. No. 114-182, 114th Congress (Frank R. Lautenberg Chemical Safety for the 21st Centruy Act); 15 U.S.C. § 2601 et al.

2

scientific requirement. Furthermore, the district court was not presented with high-quality, longitudinal research studies that found no link between fluoride intake and reduced IQ or harmed cognitive development. If CWF is incorrectly deemed to be an unreasonable risk of injury, millions of Americans—particularly our most vulnerable—will suffer reduced oral health outcomes. *See* Declaration of Dr. Johnny Johnson, Jr. in Support of Brief of Amicus Curie American Fluoridation Society, Inc. ("Dr. Johnson Decl."), ¶¶ 15-18.

## I.　The Studies Relied Upon By Respondents Utilize Urinary Fluoride, a Scientifically Unreliable and Invalid Biomarker.

Respondents claim that fluoride intake at levels as low as 1.5 parts per million (ppm) reduces children's IQ. This claim is based primarily on studies cited by the National Toxicology Program ("NTP") monograph that purport to measure fluoride intake in spot samples of individuals' urine (urinary fluoride biomarker). A spot urine sample is a single, untimed void. However, this method is well understood among the academic community to be a flawed method fraught with risks of inaccuracy. *See* Declaration of Dr. James A. Dickinson In Support of Brief of Amicus Curie American Fluoridation Society, Inc. ("Dr. Dickinson Decl."), ¶¶ 23-25. Exhibit B, *World Health Organization's 2014 Basic Methods for Assessment of Renal Fluoride Excretion in Community Prevention Programmes for Oral Health*.

The World Health Organization's manual on the assessment of fluoride excretion cautions against using urinary fluoride as a biomarker, stating—among a

3

66362.0001.4912-4621-8070.1

series of other concerns—that "urinary fluoride excretion is **not** suitable for predicting fluoride intake for individuals . . . ." Dr. Dickinson Decl., ¶ 25. Further, the manual notes that, with the usual collection methods, "there will be considerable within-subject variation in the results . . . [t]hus, within-subject variation can inflate the range and variance of data from urine excretion studies . . . [r]eports must note the potential effects of within-subject variation, to avoid misinterpretation of data presented as ranges of fluoride excretion and intakes." *Id., ¶* 25.

The studies on which Respondents rely use "spot" urine samples—untimed single voids—which are exactly the type of collection method cautioned against by the World Health Organization. *Id.,* ¶¶ 23-25. Thus, those studies operate on data collection methodology that is known to be inaccurate, undermining the researchers' results and Respondents' claims that fluoride intake in utero and early childhood harms IQ. *Id.*, ¶¶ 25-34.

## II. Numerous Studies Referenced by Respondents Are Also Limited By Flawed IQ Measurement Methodologies.

Key studies relied upon by Respondents failed to measure IQ in a valid manner. Some of the main studies on which Respondents' argument depends—such as the Maternal Infant Research on Environmental Chemicals ("MIREC") and Environmental Chemicals studies—lack accurate IQ measurement methods. *Id.*, ¶ 27-34, Exhibit C, Juliet R. Guichon, et al., *Flawed MIREC fluoride and intelligence quotient publications: A failed attempt to undermine community water fluoridation*,

4

Community Dentistry and Oral Epidemiology (2024). As Dr. Dickinson explains, these studies utilized IQ raters who lacked sufficient training, were not trained psychologists, offered no consistent validation across study sites, and reported IQ differences well within the margin of error of the IQ test methodology used. Dr. Dickinson Decl., ¶ 27-34. These failures significantly weaken the reliability and accuracy of the reported associations between fluoride intake and IQ outcomes. *Id.*, ¶ 27-34.

### III. The District Court Erred In Suggesting Fluoride's Potential Hazard Is Undisputed, While Overlooking Robust Evidence Contradicting Respondents' Claims.

The district court stated that, "[t]here is little dispute in this suit as to whether fluoride poses a hazard to human health . . . EPA's *own expert* agrees that fluoride is hazardous at some level of exposure." Findings of Fact and Conclusions of Law, Case No. 17-cv-02162-EMC, DKT 445, at 3. This statement is misleading because many substances—or indeed perhaps all—are hazardous at *some* level of intake. Dr Dickinson Decl., ¶¶ 20-22. This fact is not evidence that fluoridation at the *currently regulated levels* poses an unreasonable risk to IQ or cognitive development. *Id.*, ¶¶ 20-22.

The district court did not give sufficient consideration to two key studies presented to it. First, the well-designed 2015 New Zealand study, conducted over 40 years, analyzed whether fluoride in drinking water affected the IQ of the

5

population of Dunedin, New Zealand. *Id.*, ¶¶ 35-38, Exhibit D, Jonathan M. Broadbent, et al., *Community Water Fluoridation and Intelligence: Prospective Study in New Zealand,* American Journal of Public Health, Vol. 105, No. 1 (2015). This study utilized accurate fluoride intake measurement methodology and tested participants several times over a 38-year period. It found no evidence that fluoride in public water lowers or negatively effects IQ. Dr. Dickinson Decl., ¶¶ 35-38.

Second, a 2023 Australian study analyzed the relation to early exposure to fluoridated water and intellectual function. *Id.*, ¶¶ 35, 39-42, Exhibit E, L.G. Do, et al., *Early Childhood Exposures to Fluorides and Child Behavioral Development and Executive Function: A Population-Based Longitudinal Study*, Journal of Dental Research, Vol. 102(1) 28-36 (2023) ("2023 Australian Study"). Researchers analyzed the exposure of fluoridated water by measuring the water where participants lived and validating their findings by manually checking for signs of dental fluorosis on participants' teeth. Dr. Dickinson Decl., ¶¶ 35, 39-42. The study found that those exposed to fluoridated water had a *slight increase* in intellectual functioning, but concluded that, overall, exposure to fluoridated water was not associated with significant alteration of emotional or behavioral development and executive functioning. *Id.*, ¶¶ 35, 39-42.

Additionally, though not yet published until after the district court's Judgment, the team of researchers in a 2025 Australian study also concluded the

6

same as the 2023 Australian study. *Id.*, ¶¶ 35, 43, Exhibit E, L.G. Do, et al.,, *Early Childhood Exposures to Fluorides and Cognitive Neurodevelopment: A Population-Based Longitudinal Study* (2025) ("2025 Australian Study").

### IV. The District Court Incorrectly Relied Upon a Dubious NTP Monograph, Not Independently-Peer-Reviewed.

The district court relied upon the National Toxicology Program ("NTP") monograph, which reported that fluoridation posed a risk to IQ, but the district court's Findings of Fact and Conclusions of Law did not emphasize that the NTP monograph failed the peer-review process twice. Dr. Dickinson Decl., ¶¶ 63-66. The NTP monograph's authors submitted their research to the National Academies of Sciences, Engineering, and Medicine (NASEM) for peer-review approval in 2020 and 2021. The NTP monograph failed both times. *Id.*, ¶¶ 63-66. The peer reviews noted potential bias in the selection of the studies included in the analysis, inconsistent application of risk-of-bias criteria, lack of data transparency, insufficient evaluations of potential confounding, and flawed measures of neurodevelopmental outcomes, among other problems. *Id.*, ¶¶ 63-66.

After the research failed for the second time, the NTP dismissed the NASEM reviewers. *Id.*, ¶¶ 63-66. Neither this dismissal nor the significant faults found by the peer reviewers was addressed by the district court. However, these dismissals provoked a strong reaction in the research community. *Id.*, ¶¶ 63-66. After the NTP

7

selected its own reviewers, instead of the independent NASEM, it self-published the research as a monograph in 2024. *Id.*, ¶¶ 63-66.

Additionally, the monograph includes numerous citations of studies from the publication, *Fluoride*. *Id.*, ¶ 66. That publication is not a credible research journal; nor is it affiliated with any recognized academic institution, scientific publisher, or professional body. *Id.*, ¶ 66. It is not indexed in PubMed or other widely accepted scientific journal databases; it lacks the rigorous, independent peer-review process expected of reputable scientific outlets. *Id.*, ¶ 66. Thus, the district court incorrectly relied upon the NTP monograph, which failed the peer-review process twice, used invalid methodologies, and mainly relied upon low-quality studies with high risk of bias. *Id.*, ¶¶ 63-66.

Of the 72 studies examining fluoride intake and IQ in children reviewed in the monograph, only 19 were deemed high quality, and 18 of those studies reported an inverse association between fluoride intake and IQ. *Id.*, ¶ 64. Many of these studies, however, rely on collecting spot urine samples to measure fluoride intake. *Id.*, ¶ 64. As discussed above, this method is a critical flaw, producing invalid results. The inherent variability of this measurement method can distort results and give a misleading impression of the consistency and strength of the association between fluoride intake and IQ. *Id.*, ¶¶ 25, 64. While the NTP monograph highlights these studies for their consistency across different populations and methodologies, the

8

questionable reliability of the NTP monograph's measurement of fluoride intake undermines the credibility of the monographs' conclusions. *Id.*, ¶ 65.

Finally, a significant concern arises from the inclusion of 53 low-quality studies in the NTP monograph, of which 46 also reported an inverse association. *Id.*, ¶ 65. Many of these studies are considered at high risk of bias due to methodological flaws, such as inadequate control for confounding factors, and they originate from publications with questionable rigor. *Id.*, ¶ 65. The reliance on such studies undermines the integrity of the review's findings because they can skew results and lead to misleading conclusions. *Id.*, ¶ 65. This practice raises critical issues about the validity and reliability of the monograph's evidence base. Including so many studies with a high risk of bias dilutes the evidence pool, introducing variability that can obscure true findings and lead to erroneous interpretations. *Id.*, ¶ 63-65. Nonetheless, in its conclusions, the monograph's authors did recognize that there is no good evidence that water fluoridation at levels below 1.5 parts per million has any relationship to harm to children's brain development. *Id.*, ¶ 63.

V.  **The American Fluoridation Society Believes Community Water Fluoridation is Necessary to Promote the Health of Americans.**

The American Fluoridation Society was founded by health professionals who grew concerned that the public's health, particularly the health of children, was threatened by the effort to eliminate CWF in the United States. Dr. Johnson Decl., ¶ 10. The AFS is composed of health professionals and volunteer advisory committees

9

who lend their expertise in interpreting research, advising on water quality and technical questions regarding CWF, and aiding communities with their CWF projects. *Id.*, ¶¶ 6-7. AFS supports the current CWF levels recommended by the U.S. Public Health Service, and believes it is necessary to maintaining oral health in the United States. *Id.*, ¶¶ 18. Additionally, AFS members have not found valid and credible research demonstrating that water fluoridation is associated with harm to IQ or executive function. *Id.*, ¶ 17.

Dental decay is the most common chronic disease in adults and children in the United States. It can lead to severe systemic health conditions. *Id.*, ¶¶ 15-16. Unfortunately, dental decay disproportionately affects low-income and marginalized populations—especially children, the elderly, and those in long-term living facilities. *Id*. Poor oral health is increasingly linked to serious chronic diseases, including heart disease, stroke, exacerbation of diabetes issues, and certain cancers. *Id.*

Community water fluoridation is critical to oral health, as it has been shown in viable research to significantly reduce cavities across all age groups. *Id.*, ¶ 8. For many individuals, water fluoridation is the *only* preventive dental care they will ever receive. *Id.*, ¶ 16. If CWF is incorrectly deemed unreasonably harmful, based on invalid and inaccurate studies, millions of Americans will suffer from decreased oral health and systemic outcomes. *Id.*, ¶¶ 15-16.

10

## CONCLUSION

The most accurate and current scientific research shows that water fluoridation, at the levels approved by the EPA and the U.S. Public Health Service, is safe and not associated with an unreasonable risk of harm. The research relied on by the district court and Respondents is based upon invalid and inaccurate testing methodologies. *Amicus* respectfully requests that the district court's Judgment be reversed.

Dated: July 24, 2025.    Respectfully submitted,

HAWLEY TROXELL ENNIS & HAWLEY LLP

*/s Cathy R. Silak*
Cathy R. Silak, ISB No. 3118
  *Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

HAWLEY TROXELL ENNIS & HAWLEY LLP

*/s Stephen R. Thomas*
Stephen R. Thomas, ISB No. 2326
*Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

11

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this *Amicus* brief complies with Fed. R. App. P. 29(a)(5), Fed. R. App. P. 32, and 9th Circuit Rule 32-1 as it contains 2,310 words and is 11 pages, excluding the portions exempted by Fed. R. App. P. 32(f). This is less than half of the words and page limit afforded to the Appellants' principle brief.

The undersigned further certifies that this *Amicus* brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using 14-point Times New Roman font.

Dated:  July 24, 2025.                    Respectfully submitted,

                                          HAWLEY TROXELL ENNIS & HAWLEY LLP


                                          */s Cathy R. Silak*
                                          Cathy R. Silak, ISB No. 3118
                                              *Attorneys for Amicus Curiae American Fluoridation Society, Inc.*




                                          HAWLEY TROXELL ENNIS & HAWLEY LLP


                                          */s Stephen R. Thomas*
                                          Stephen R. Thomas, ISB No. 2326
                                          *Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

12

66362.0001.4912-4621-8070.1

## CERTIFICATE OF SERVICE

The undersigned certifies that she has electronically filed the foregoing Motion, Amicus Brief, and supporting Declarations with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: July 24, 2025.　　　　Respectfully submitted,

　　　　　　　　　　　　　　HAWLEY TROXELL ENNIS & HAWLEY LLP


　　　　　　　　　　　　　　*/s Cathy R. Silak*
　　　　　　　　　　　　　　Cathy R. Silak, ISB No. 3118
　　　　　　　　　　　　　　　　*Attorneys for Amicus Curiae American Fluoridation Society, Inc.*


　　　　　　　　　　　　　　HAWLEY TROXELL ENNIS & HAWLEY LLP


　　　　　　　　　　　　　　*/s Stephen R. Thomas*
　　　　　　　　　　　　　　Stephen R. Thomas, ISB No. 2326
　　　　　　　　　　　　　　*Attorneys for Amicus Curiae American Fluoridation Society, Inc.*

13