**No. 25-384**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

FOOD AND WATER WATCH, *et al.*
*Plaintiffs-Appellees,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.,*
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of California
No. 3:17-cv-02162
Hon. Edward M. Chen, United States District Judge

---

## BRIEF OF AMICUS NATURAL RESOURCES DEFENSE COUNCIL
## IN SUPPORT OF APPELLEES AND AFFIRMANCE

---

Selena Kyle
Natural Resources Defense Council
20 N. Wacker Dr., Suite 1600
Chicago, IL 60606
skyle@nrdc.org
(312) 651-7906

Margaret T. Hsieh
Michael E. Wall
Natural Resources Defense Council
111 Sutter St., Floor 21
San Francisco, CA 94104
mhsieh@nrdc.org
mwall@nrdc.org
(415) 875-6135

Vivian H.W. Wang
Natural Resources Defense Council
40 West 20th St.
New York, NY 10011
vwang@nrdc.org
(212) 727-4477

*Counsel for Amicus Curiae*
*Natural Resources Defense Council*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), amicus curiae Natural Resources Defense Council, Inc. (NRDC) states that it is a not-for-profit, non-governmental organization. NRDC has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

<u>*/s/ Vivian H.W. Wang*</u>
Vivian H.W. Wang

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

INTERESTS OF AMICUS CURIAE ..................................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 3

ARGUMENT ....................................................................................................... 5

I.    Article III traceability and redressability are
satisfied if the requested relief would remedy the
challenged source of harm ............................................................... 5

II.   Congress crafted TSCA section 21 as a powerful tool
for citizens to push EPA to protect public health .................................. 12

    A.    Section 21's "de novo proceeding" is more
than a court reviewing anew an existing
administrative record ....................................................... 13

    B.    EPA's idea of a proceeding with plaintiffs'
evidence frozen in time ignores the balance
struck by TSCA's abridged petition review
period and is contrary to the statute's purpose .......................... 23

    C.    EPA retains discretion to consider economic
and other factors as part of its section 6(a)
rulemaking ...................................................................... 26

CONCLUSION ................................................................................................. 29

CERTIFICATE OF COMPLIANCE ................................................................... 32

CERTIFICATE OF SERVICE .......................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Avenoso v. Reliance Standard Life Ins. Co.,*
19 F.4th (8th Cir. 2021) ........................................................... 18, 19

*Barnum Timber Co. v. EPA,*
633 F.3d 894 (9th Cir. 2011) ............................................... 6, 7, 11

*Callejo v. Resol. Tr. Corp.,*
17 F.3d 1497 (D.C. Cir. 1994) ....................................................12

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) .....................................................................20

*Clean Air Council v. EPA,*
No. 25-cv-01473 (C.D. Cal. filed July 8, 2025) ...........................2

*Env't Def. Fund v. Reilly,*
909 F.2d 1497 (D.C. Cir. 1990) ..................................................12

*Kearney v. Standard Ins. Co.,*
175 F.3d (9th Cir. 1999)........................................................ 18, 19

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ............................................................ 8, 11, 12

*Matsumoto v. Labrador,*
122 F.4th 787 (9th Cir. 2024) .....................................................11

*Nat'l Fam. Farm Coal. v. EPA,*
966 F.3d 893 (9th Cir. 2020).........................................................7

*NRDC v. EPA,*
961 F.3d 160 (2d Cir. 2020)..........................................................1

*Ocean Advocates v. U.S. Army Corps of Engineers*
    402 F.3d 846 (9th Cir. 2005)...................................................................7, 8

*Safer Chems., Healthy Families v. EPA,*
    943 F.3d 397 (9th Cir. 2019)....................................................................1

*Trumpeter Swan Soc'y v. EPA,*
    774 F.3d 1037 (D.C. Cir. 2014) ..............................................................28

*WildEarth Guardians v. U.S. Dep't of Agric.,*
    795 F.3d 1148 (9th Cir. 2015)...................................................................7

**Statutes**

5 U.S.C. § 706.........................................................................................20

5 U.S.C. § 706(2).....................................................................................16

15 U.S.C. § 2601......................................................................................13

15 U.S.C. § 2603......................................................................................22

15 U.S.C. § 2605(a)..................................................................................13

15 U.S.C. § 2605(a)(1)-(7)........................................................................27

15 U.S.C. § 2605(c)(2)(A)(iv)...................................................................27

15 U.S.C. § 2605(c)(3) .............................................................................27

15 U.S.C. § 2618(c) ..................................................................................20

15 U.S.C. § 2618(c)(1)(B) .......................................................... 16, 20, 22

15 U.S.C. § 2620......................................................................... *passim*

15 U.S.C. § 2620(a)...................................................................... 4, 13

15 U.S.C. § 2620(b)(1) ................................................................. 15, 24

15 U.S.C. § 2620(b)(2) ................................................................. 23, 24

15 U.S.C. § 2620(b)(3) ................................................................. 18, 21

15 U.S.C. § 2620(b)(4) ................................................................. 4, 17

15 U.S.C. § 2620(b)(4)(A) ...............................................................21

15 U.S.C. § 2620(b)(4)(B) ................................................... 4, 5, 13, 14

15 U.S.C. § 2620(b)(4)(B)(ii) ....................................................... 27, 28

Pub. L. No. 114-182, 130 Stat. 448 (2016) ............................................13

## Rules

Fed. R. App. P. 29(a) ........................................................................1

Fed. R. Civ. P. 26(b) .......................................................................15

Fed. R. Civ. P. 26(b)(1) ...................................................................25

Fed. R. Civ. P. 56(c)(1) ...................................................................15

Fed. R. Civ. P. 56(d)(2) ...................................................................15

Fed. R. Civ. P. 8(a)(2) .....................................................................15

Fed. R. Evid. 401 ...........................................................................14

## Regulations

86 Fed. Reg. 64129 (Nov. 17, 2021) .....................................................17

87 Fed. Reg. 67901 (Nov. 10, 2022) .......................................................2

93 Fed. Reg. 20575 (May 15, 2025) ......................................................17

## Legislative Materials

122 Cong. Rec. 32,857 (1976) (statement of Sen. Tunney) ...............................12

S. Rep. No. 94–698 (1976), 1976 U.S.C.C.A.N. 4491 ................................... 12, 22

## Other Authorities

*Black's Law Dictionary*
    (12th ed. 2024)..............................................................................14

EPA, Protect Your Family from Sources of Lead (Nov. 17, 2025),
    https://perma.cc/F2XX-U78D ....................................................10

FDA, Cosmetic Ingredients (May 19, 2022),
    https://perma.cc/KB9R-MKFZ ..................................................10

Merriam-Webster Dictionary (online ed.), https://www.merriam-
    webster.com/dictionary/proceeding ......................................................14

## INTERESTS OF AMICUS CURIAE[1]

Natural Resources Defense Council, Inc. (NRDC) is a health and environmental advocacy organization with hundreds of thousands of members throughout the United States. For more than five decades, NRDC has worked to protect people from toxic chemicals, including through regulatory and legislative advocacy and litigation to strengthen and enforce the Toxic Substance Control Act (TSCA).

NRDC has, for example, successfully challenged exemptions in the Environmental Protection Agency's (EPA) 2018 regulations on mercury-containing products, *NRDC v. EPA*, 961 F.3d 160 (2d Cir. 2020); parts of EPA's 2019 implementing regulations on chemical risk evaluations, *Safer Chems., Healthy Families v. EPA*, 943 F.3d 397 (9th Cir. 2019); and EPA's 2020

---

[1] Counsel for Plaintiffs consents to the filing of this amicus brief. Counsel for Defendants stated that "EPA consents to an amicus filing that is timely and conforms to the applicable rules." This brief is timely filed seven days after Plaintiffs-Appellees' brief and complies with the applicable rules. *See* Fed. R. App. P. 29(a). Per the Circuit Advisory Committee Note to Circuit Rule 29-2, the consent of all parties "relieves the Court of the need to consider a motion" for leave to file an amicus brief.

risk evaluation for the carcinogen methylene chloride, *see* 87 Fed. Reg. 67901 (Nov. 10, 2022). NRDC has also submitted public comments to EPA supporting more rigorous evaluation under TSCA of other dangerous chemicals, including trichloroethylene and perchloroethylene.

NRDC is particularly interested in the proper interpretation and application of section 21 of TSCA, 15 U.S.C. § 2620, under which Plaintiffs-Appellees' claim arises. Section 21 is an important avenue for members of the public to push past bureaucratic lethargy and spur EPA to protect public health when the evidence shows that a chemical presents an unreasonable risk. NRDC has petitioned and sued EPA under TSCA section 21, including to compel regulations eliminating the unreasonable risk posed by an oil refinery chemical. *See, e.g., Clean Air Council v. EPA*, No. 25-cv-01473 (C.D. Cal. filed July 8, 2025). Because an adverse decision in this case may undermine NRDC's and the public's ability to use section 21 to protect public health, NRDC submitted two amicus briefs in the district-court phase of this case.

NRDC takes no position on the factual findings below on whether water fluoridation presents an unreasonable risk to health.[2]

## SUMMARY OF ARGUMENT

The Court should affirm the district court's conclusions that Plaintiffs have standing and that section 21 provides for a de novo proceeding in which the court develops a record and gathers evidence.

First, EPA's construction of Article III, if adopted, would close the courthouse doors in many cases where there is more than one pathway of exposure to a dangerous substance. That approach would be contrary to settled law, under which the existence of multiple causes of a harm does not defeat traceability or redressability so long as the court can remedy the cause of harm that a plaintiff challenges. The reality that environmental and public health threats often stem from multiple pollutant sources does not render each source beyond judicial redress.

---

[2] No party or party's counsel authored this brief in whole or in part. No person or entity other than NRDC made monetary contributions intended to fund the preparation or submission of this brief.

Second, Congress chose not to give EPA the final word on when the agency must address unreasonable risks from toxic chemicals. Section 21 enables the public to petition EPA to act. 15 U.S.C. § 2620(a). If EPA refuses, or if it fails to either grant or deny the petition within the statutory timeframe, section 21 provides for judicial review. *Id.* § 2620(b)(4). Congress further chose not to limit the court's review to a deferential, arbitrary-and-capricious assessment based on an administrative record, as is typical with many environmental statutes. *See id.* § 2620(b)(4)(B). Instead, Congress provided for a "de novo proceeding" not limited to the petition and EPA's (often cursory) petition denial. *Id.*

EPA argues that a proceeding that allows evidentiary development in the district court would be bad policy. The agency invokes the specter of a bare-bones petition followed by a boundless trial with a plaintiff using "gotcha" techniques, but that fear is unfounded. Trials are expensive and slow—this case took more than seven years to unfold in district court—so petitioners have every incentive to persuade the agency through their petition, rather than waiting to "ambush" the agency in court.

4

Moreover, while a section 21 judicial proceeding may feel unusual to EPA regulators, it should not feel the least bit unusual or unmanageable to trial judges: section 21 calls for the court to assess whether the action requested in the petition is supported by a "preponderance of the evidence," *id.*, not unlike a judge's routine consideration of claims set out in a civil complaint. Familiar tools of civil procedure, including discovery, live testimony, hearsay rules, and expert-qualification rules, are standard processes and guardrails that district courts understand and have deep experience superintending. Congress's decision to require a de novo district court proceeding, which relies on those well-established fact-finding procedures, should not be second-guessed by EPA or this Court.

## ARGUMENT

I. **Article III traceability and redressability are satisfied if the requested relief would remedy the challenged source of harm**

EPA sets the bar for standing impermissibly high. The agency argues for the first time on appeal, *see* Dkt. No. 57.1 at 22-23 ("FWW Br."), that even without added fluoridation, the drinking water of Plaintiffs' declarant contains fluoride at a level that the district court found presents

5

unreasonable risk, *see* Dkt. No. 21.1 at 38-39 & n.9 ("EPA Br."). EPA contends that because Plaintiffs' requested remedy would not require the agency to abate naturally occurring fluoride, and because—per EPA's supposition—Plaintiffs' declarant would continue to purchase bottled water based on naturally occurring fluoride levels alone, a rulemaking that eliminates added fluoride would not redress Plaintiffs' declarant's injury. *See* EPA Br. 40 ("[E]ven with a favorable decision, . . . [declarant] will continue to incur" the costs of buying bottled water.).

Even if EPA's factual premises are correct—NRDC takes no position on Plaintiffs' contention that EPA has misstated the factual record and the district court's findings—EPA's *legal* conclusion does not follow.

The test for redressability is not whether a court order would eliminate the harm entirely, but whether the order could rectify the challenged source of injury. If a defendant is at least partially causing the complained-of injury, a plaintiff "need not eliminate any other contributing causes to establish its standing." *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011); *see also WildEarth Guardians v. U.S. Dep't of Agric.*, 795

6

F.3d 1148, 1157 (9th Cir. 2015) (noting that "a plaintiff may sue [a] defendant, even if the defendant is just one of multiple causes of the plaintiff's injury").

In *Barnum Timber Company v. EPA*, a landowner alleged that EPA's designation of a nearby river as an "impaired water body" triggered land use restrictions that diminished the value of his property. 633 F.3d at 896. The Ninth Circuit acknowledged that EPA's designation may be just "one factor, among many, that might affect the value of [the] property," but concluded that the landowner nonetheless had standing to challenge EPA's decision as one cause of his injury. *Id.* at 901; *see also Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 904, 910 (9th Cir. 2020) (holding that, because the "mere existence of multiple causes of an injury does not defeat redressability," plaintiffs had standing to challenge EPA's approval of a pesticide even though other pesticides contained the same harmful chemical (internal quotation marks omitted)).

In *Ocean Advocates v. U.S. Army Corps of Engineers*, the Ninth Circuit reached a similar result in a challenge to the construction of an addition to

7

an oil refinery dock. 402 F.3d 846, 860 (9th Cir. 2005). Even though "other factors may also cause" increased ship traffic (and hence increased risk of oil spills), an injunction that halted the new dock would still "alleviate" plaintiff's injury. *Id.*; *see also Massachusetts v. EPA*, 549 U.S. 497, 524 (2007) (concluding that even "a small incremental step" suffices to establish redressability).

Here, based on district-court fact findings not disputed on appeal, Plaintiffs easily clear the Article III hurdle.[3] A rule barring water fluoridation would eliminate a source of fluoride to which Plaintiffs' members are exposed, and that provides redress even if other sources of fluoride exposure exist. Moreover, assuming (for standing purposes only) that health risk from fluoride exposure is additive and water fluoridation is a source of exposure, *see* FWW Br. 30, Plaintiffs' requested remedy would

---

[3] EPA seeks to introduce on appeal factual assertions relating to background fluoride levels in one declarant's drinking water. S*ee* EPA Br. 38-39 & n.7; FWW Br. 22-24. EPA does not, however, contest for Article III purposes the district court's factfinding on fluoride's health effects. *See* EPA Br. 3, 39 & n.9.

mitigate (even if not entirely eliminate) their exposure. That is more than enough to satisfy the causation and redressability requirements.

The same result follows even when focusing myopically (as EPA does) on injury in the form of Plaintiffs' declarant's expenditures to avoid exposure to fluoride.[4] Even if EPA's conjecture were true that the declarant would continue to buy bottled water based on naturally occurring fluoride levels alone, eliminating added fluoride would (accepting for purposes of this analysis the findings of fact below, *see* FWW Br. 30) bring levels of the chemical down closer to the levels at which the declarant would feel comfortable forgoing the expense. *See id.* at 31-32 (noting that the declarant

_____

[4] For purposes of assessing causation and redressability, the central inquiry here is increased exposure itself, though the financial cost of mitigating the harm can be an additional form of injury. *See, e.g.*, 1-SER-80 to -81 (Plaintiffs' trial brief articulating the relevant injury as "plaintiffs' exposure"); 3-SER-557 (declarant discussing fluoride bioaccumulation and health risks); 5-ER-839 (district court finding a "credible causal connection between . . . neurodevelopmental harm and EPA's regulation of fluoride exposure or lack thereof" that "would likely be redressed if EPA were to pass a rule prohibiting the addition of fluoridation chemicals to public drinking water supplies"); 2-ER-82 to -83 (same).

"would stop filtering her water if fluoridation ends"). Again, this suffices to meet the causation and redressability requirements.

This understanding of the court's jurisdiction squares with the nature of environmental and health harms that Congress has chosen to confront through a range of statutes. People are routinely exposed to toxic chemicals through multiple routes. For example, people can be exposed to lead by drinking water, by breathing particulates from deteriorating lead paint, and by ingesting lead that settles into the soil and dust. *See* EPA, Protect Your Family from Sources of Lead (Nov. 17, 2025), https://perma.cc/F2XX-U78D (last visited Nov. 21, 2025). People are also exposed to multiple chemicals at once. Cosmetics, for instance, may contain more than one ingredient of concern. *See* FDA, Cosmetic Ingredients (May 19, 2022), https://perma.cc/KB9R-MKFZ (last visited Nov. 21, 2025). If standing were defeated merely because there are multiple causes of harm and a lawsuit addressed just one, that would undermine people's ability to protect themselves and their families from dangerous substances.

This principle applies beyond the health and environmental context. Say a developer wants to build a housing development, but their permit is denied based on conflicts with several different regulations. Even if the developer successfully challenged one regulation, the other regulations would still prevent the developer from securing the permit. But because eliminating the contested regulation would address that particular roadblock, the redressability requirement would nonetheless be satisfied. *Cf. Barnum*, 633 F.3d at 901; *accord Matsumoto v. Labrador*, 122 F.4th 787, 801 (9th Cir. 2024) (finding standing to challenge a law that empowered the state attorney general to prosecute groups providing abortion services, and noting that, while county prosecutors would retain authority to prosecute even if the challenged law were enjoined, "[p]artial amelioration of a harm . . . suffices for redressability").

As these examples show, complex and sometimes multi-jurisdictional challenges are not usually solved "in one fell regulatory swoop." *Massachusetts*, 549 U.S. at 524. Just because stopping the contested regulatory action is only a step toward the ultimate solution "does not . . .

support the notion that federal courts lack jurisdiction to determine whether that step conforms to law." *Id*. Congress recognized that agencies must often address these issues piecemeal. Plaintiffs, similarly, can go to court to seek redress for these problems in incremental steps.

## II. Congress crafted TSCA section 21 as a powerful tool for citizens to push EPA to protect public health

EPA's reading of section 21 neuters the citizen enforcement provision of TSCA. This Court's task is to read the statute as Congress enacted it, not as EPA may wish it had been written.

Congress crafted TSCA's citizen petition provision to ensure that "lax administration" of the statute, S. Rep. No. 94–698, at 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 4503, would not sap the law of its "vital authority," *Env't Def. Fund v. Reilly*, 909 F.2d 1497, 1499 (D.C. Cir. 1990) (quoting 122 Cong. Rec. 32,857 (1976) (statement of Sen. Tunney)). *See also* FWW Br. 3-5 (reviewing legislative history); 1-ER-64 to -65 (same). Frustrated by EPA's failure to act more assertively to address chemical exposure risks, Congress gave unsuccessful section 21 petitioners the right to establish unreasonable risk in a "de novo" district court "proceeding."

12

*See* 15 U.S.C. § 2620(b)(4)(B). This judicial review provision was included in TSCA when Congress enacted the statute in 1976. Forty years later, when Congress substantially revised TSCA, it did not disturb the citizen-petition provision. *See generally* Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114-182, 130 Stat. 448 (2016) (codified at 15 U.S.C. § 2601 *et seq.*). Congress intended for petitioners, like Plaintiffs here, to have access to typical mechanisms of civil litigation to prove that chemicals (or specific uses of those chemicals) present unreasonable risks, thereby triggering EPA regulatory action to eliminate those unreasonable risks. 15 U.S.C. §§ 2620(a), 2605(a).

## A. Section 21's "de novo proceeding" is more than a court reviewing anew an existing administrative record

EPA is mistaken that "de novo proceeding" merely means judicial review in which the court does not give "deference to the findings and reasons in EPA's denial of the petition." EPA Br. 48-49. What EPA is describing is de novo *review*. TSCA section 21 does not refer to "de novo review." Instead, it calls for a de novo *proceeding*. And that is something different altogether.

13

A "proceeding" is a "legal action." Merriam-Webster Dictionary (online ed.), https://www.merriam-webster.com/dictionary/proceeding (last visited Nov. 21, 2025). It encompasses "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, Black's Law Dictionary (12th ed. 2024). It is this "proceeding" that Congress decided should be "de novo"—that is, anew. A proceeding that is essentially an appeal restricted to evidence presented below is not a de novo proceeding.

EPA responds that section 21 identifies "such petition" as the subject of the court's "consider[ation]," limiting the court's review to the facts presented in the petition itself. EPA Br. 44 (quoting 15 U.S.C. § 2620(b)(4)(B)); *see also* Br. of *Amicus* Am. Chem. Council, Dkt. No. 31.2 at 16 ("ACC Br."). This argument conflates "facts" asserted in a petition with "evidence" presented to support those facts. The difference between "facts" and "evidence" is fundamental and clear from the Federal Rules of Civil Procedure and Federal Rules of Evidence. Facts are what may be proven, and evidence is what is used to prove facts. *See, e.g.*, Fed. R. Evid. 401

14

("Evidence is relevant if . . . it has any tendency to make a fact more or less probable . . . ."). Thus, a judicial complaint needs to allege facts, *see, e.g.*, Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), even though evidence to support those alleged facts may be developed subsequently through discovery, *see, e.g.*, Fed. R. Civ. P. 56(c)(1), (d)(2); *see generally* Fed. R. Civ. P. 26(b). Section 21 petitions are in this way similar to complaints, as illustrated by the fact that section 21 explicitly distinguishes between the petition "set[ting] forth" "facts," 15 U.S.C. § 2620(b)(1), and the petitioner-plaintiff's burden at the *judicial* stage to prove their case by a "preponderance of the evidence," *id.* § 2620(b)(4)(B).

Taking EPA's argument to its logical end would also mean that the petition denial and anything cited in the denial would be excluded from the court's scope of review, because the denial is not part of "such petition"—that is, the citizen petition. *See* 1-ER-56. That approach might allow petitioners to prevail in court, even when they should not, because EPA's own presentation would be limited to the evidence that the

15

petitioners included in their petition. Congress could not have intended such an outcome.

Though they claim to give meaning to Congress's words, both EPA and amicus curiae American Chemistry Council (ACC) reduce section 21's "de novo *proceeding*" to, at most, de novo *review* of an already-existing administrative record. If the court is inquiring only whether EPA "erred in denying the petition," EPA Br. 45, that is more akin to APA review of the "whole [agency] record" with "due account . . . taken of the rule of prejudicial error," 5 U.S.C. § 706(2). But section 21 tasks courts with assessing whether plaintiffs have established unreasonable risk, and not whether EPA was arbitrary and capricious in deciding that the petition does not establish unreasonable risk (assuming EPA decided the petition at all). Congress did not use any of the words it normally uses to limit judicial review to an administrative record, despite knowing how to do so. *See, e.g.*, 15 U.S.C. § 2618(c)(1)(B) ("Section 706 of title 5 shall apply to review of a rule or order under this section," with specified exceptions.).

16

ACC's analogy to an appeals court's "'de novo' review" of a district court's "grant of summary judgment," ACC Br. 5, is inapt. Section 21 empowers unsuccessful petitioners to go to court not only if EPA formally denies their petition, but also if EPA fails to act on the petition within the requisite 90 days. 15 U.S.C. § 2620(b)(4). Thus, EPA may never have answered the petition for which a plaintiff seeks judicial review, whereas on an appeal of a summary judgment decision, both sides will have briefed the issues below.

Even when EPA does issue a written denial of a petition, the decisions are often cursory, with no opportunity for evidentiary development through discovery or for the petitioner to test or rebut EPA's evidence. *See, e.g.*, 93 Fed. Reg. 20575 (May 15, 2025) (four-page denial of petition for TSCA section 6(a) rulemaking on refinery chemical, citing six sources, four of which were the petition's appendices); 86 Fed. Reg. 64129 (Nov. 17, 2021) (four-page document denying petition for a section 6(a) rulemaking for chemical mixtures in cosmetics). Nor would EPA necessarily have time for extensive evidentiary development and

17

deliberation, given that Congress gave the agency just 90 days to decide whether to grant or deny section 21 petitions. *See* 15 U.S.C. § 2620(b)(3).

EPA's consideration of a TSCA section 21 petition does not include the discovery procedures and rules of evidence that ensure an appellate court reviewing a summary judgment decision has before it a fully developed and fair evidentiary record. Nor would those tools be available to a district court conducting the limited de novo *review* that EPA and ACC urge. In section 21, Congress did not provide for such evidentiary development during the agency's 90-day consideration, instead leaving that process for the de novo district court *proceeding*, where it would be subject to a federal district judge's management and oversight.

ACC's other comparisons do not help its case. *See* ACC Br. 6-7 (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc); *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020 (8th Cir. 2021)). Challenges to denials of benefits under ERISA (the Employee Retirement Income Security Act) are backward-looking—the court reviews a plan administrator's decision to deny a claim for benefits, and "the record that was before the

18

administrator furnishes the primary basis for review." *Kearney*, 175 F.3d at 1090.[5] TSCA section 21 presents the court with a forward-looking inquiry—it asks whether petitioners, like Plaintiffs here, have proven by a preponderance of the evidence that an unreasonable risk exists, for which EPA must initiate rulemaking to eliminate. *See* 15 U.S.C. §§ 2620(b)(4)(B), 2605(a).[6]

---

[5] Both *Kearney* and *Avenoso* acknowledged that in some circumstances, the court may allow for new evidence. *See Kearney*, 175 F.3d at 1090-91; *Avenoso*, 19 F.4th at 1026 (noting that "the district court may admit [for good cause] additional evidence," including witness testimony, "for the purpose of deciding the merits"). However, the appellants in those cases were unable to point to what additional evidence they wanted to submit. *See Kearney*, 175 F.3d at 1091 ("On appeal, [plaintiff] argues that the district court ought to have taken additional evidence . . . . But the brief does not say what new evidence, nor was any specific new evidence proposed to the district court."); *Avenoso*, 19 F.4th at 1026 ("[E]ach party confirmed at oral argument that it has no additional evidence to submit . . . .").

[6] The employment discrimination, tax, and bank deposit insurance cases that ACC discusses, ACC Br. 9-11, stand for the unremarkable proposition that courts look to a statute's text, structure, purpose, and legislative history—as the district court did with TSCA. *See* 1-ER-59-60 & nn.3-4; *see, e.g.*, *Callejo v. Resol. Tr. Corp.*, 17 F.3d 1497, 1499 (D.C. Cir. 1994) (finding that a de novo proceeding was appropriate for disputed insurance claims and noting that the agency did not create "adjudicative procedures" or "a record adequate for review in the courts of appeals").

TSCA's structure provides further evidence of Congress's intent for section 21. Challenges to existing rules and orders, unlike those seeking initiation of a new rule, are not accorded de novo judicial review. *Compare* 15 U.S.C. § 2618(c) (providing for judicial review of a rule or order), *with id.* § 2620(b)(4)(B) (specifying de novo proceedings for denials of petitions to, inter alia, initiate new rulemaking). For the former, section 19 of TSCA provides that review is conducted under the APA's framework, with some modifications. *See id.* § 2618(c)(1)(B) (incorporating 5 U.S.C. § 706 with certain adjustments). The APA generally requires judicial review to be based on the record of the agency's proceedings, *see* 5 U.S.C. § 706, rather than on a new record created in the district court, *see Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971). Administrative record review makes sense for challenges to EPA's TSCA rules and orders because in those cases, the administrative record on which EPA issued the challenged rule or order has already been built through successive stages, including the agency's own technical, scientific, and regulatory analysis, followed by public input and EPA's responses to that input.

20

EPA assumes that because section 21 calls on EPA to publish its "reasons," for a denial, 15 U.S.C. § 2620(b)(3), Congress intended the petition process to be a "robust exhaustion requirement," *see* EPA Br. 46. However, section 21 also provides for judicial review when EPA fails to decide a section 21 petition within the statutory 90-day period. 15 U.S.C. § 2620(b)(4)(A). In such a suit, EPA would not have published "reasons" for its denial, EPA Br. 46, because the agency made no decision. The record for review, as EPA understands it, might consist only of the petition because EPA did not issue a written decision within the allotted time. Such a scenario makes even more clear that by providing for a "de novo proceeding," Congress intended for the court to develop a record and gather evidence. *See also* 1-ER-64 to -65 ("[T]he legislative history is clearly referring *both* to situations where the EPA denies a petition by publishing its reasons and when it does so constructively by failing to act within 90 days.").

In response, ACC asserts that because section 19 "does not directly govern" judicial review of section 21 petitions, it does not offer a useful

21

contrast to section 21's judicial review language. ACC Br. 13. That observation does not advance ACC's position. Section 19 covers direct challenges in court to categories of EPA's TSCA rules and orders. Where EPA has held a notice-and-comment process before finalizing a rule, Congress understood that there would be an existing administrative record on which the court could base its review. *See* 15 U.S.C. § 2618(c)(1)(B) (citing, e.g., rules issued under 15 U.S.C. § 2603, which provides for Federal Register notice and public comment). But in "judicial review of [EPA's] denial of a citizen's petition or failure to act, there would be no record upon which the review could be based, and therefore a de novo procedure is essential to provide the opportunity to develop such a record." S. Rep. No. 94-698, at 12-13, *reprinted in* 1976 U.S.C.C.A.N. at 4502-03.

ACC's strained reading of the legislative history, *see* ACC Br. 20-22, fails to show that by adding the words "such petition," Congress was reversing its understanding of the court's need to "develop . . . a record," S. Rep. No. 94-698, at 12-13, *reprinted in* 1976 U.S.C.C.A.N. at 4502-03. A court's review of "such petition" (the language enacted) is consistent with

22

review of "a citizen's petition" (from the Senate report). *See id*. Nothing in

TSCA's text or legislative history, *see* 1-ER-64 to -65, suggests that the

words "such petition" reflected a changed understanding of the *scope* of

review. EPA's discretion to hold a hearing on a petition, *see* ACC Br. 22 n.6,

does not alter the analysis, *see* 15 U.S.C. § 2620(b)(2) (EPA "*may* hold a

public hearing or *may* conduct such investigation or proceeding as [EPA]

deems appropriate" (emphasis added)). And ACC's reference to section 19

is unavailing for the reasons discussed above. *See supra* pp. 21-22.

 The conclusion that section 21 allows for new evidence does not rely

"simply" on the term "'de novo,' on its own," *see* ACC Br. 11, but places the

phrase in the context of the rest of section 21 and TSCA as a whole. EPA

and ACC fail in their attempt to muddy TSCA's language and to conflate

de novo *review* of an existing agency record with a de novo *proceeding*.

**B. EPA's idea of a proceeding with plaintiffs' evidence frozen in time ignores the balance struck by TSCA's abridged petition review period and is contrary to the statute's purpose**

 EPA appears to recognize the limits of its own argument when it

hedges that "[e]ven if Section 21 allows for *some* additional evidence, here

the district court encouraged Plaintiffs to present a case built *overwhelmingly* on new evidence that did not exist at the time of the petition." EPA Br. 33 (emphasis added).

EPA's concern about being surprised with "overwhelmingly" new evidence in litigation, *id.*, is unfounded. Section 21 requires a petitioner to "set forth" facts that support the petition's requested action, which allows EPA to identify the categories of scientific studies and other information that the agency can choose to examine, *see* 15 U.S.C. § 2620(b)(1), (2). Petitioners do not have an incentive to withhold evidence supporting their position. On the contrary, petitioners have good reason to make their best case to EPA in an administrative petition. The petition process, when it succeeds, is a quick and efficient path to rulemaking because EPA must decide whether to answer the petition and initiate rulemaking within 90 days of receiving a petition. Litigation takes much longer and entails greater expense.

Once EPA concedes that section 21 allows the introduction of some evidence not contained in or available at the time of the petition, then the

question is one of line-drawing. That line drawing is a classic example of case management well within a federal district judge's traditional domain. In civil-discovery cases, plaintiffs start with a complaint that includes basic factual allegations tied to the statutory language on which plaintiffs base their legal claims. The district court may then be called on to decide how much discovery to allow, taking into account its "relevan[ce] to any party's claim or defense" and "proportional[ity] to the needs of the case." Fed. R. Civ. P. 26(b)(1). The judge could, for example, limit or prohibit discovery on matters not raised in the petition. This shields a defendant from wide-ranging discovery entirely untethered "to the content of the petition," ACC Br. 7-8 n.2, and ensures the petition process is not "meaningless," *see* EPA Br. 32. District judges also exercise case-management discretion to guide court proceedings and to keep cases moving efficiently. Nothing in section 21 suggests that Congress intended to take that normal authority away from the district courts.

EPA's contrary position would hinder, rather than aid the court in resolving the question that section 21 tasks the court with resolving:

25

whether there is an unreasonable risk. Restricting petitioners to evidence presented in their petition could deprive them—and the court—of highly probative evidence. If EPA were then allowed to introduce evidence not included in any written denial of the petition (as EPA did in this case, *see* FWW Br. 49), that would create a double standard. And if EPA were *not* allowed to introduce such additional evidence in the trial court, it would be constrained to whatever evidence (if any) it had gathered and included in a written denial (assuming EPA issued one) during the 90 days Congress gave the agency to act on a petition. This approach would not be conducive to the district court's ability to reach a well-informed decision, based on the full set of relevant scientific evidence, about whether a particular use of a chemical presents an unreasonable risk to health or the environment.

### C. EPA retains discretion to consider economic and other factors as part of its section 6(a) rulemaking

A section 21 plaintiff's success in a de novo court proceeding does not stymie the ability of industry groups and interested members of the public to weigh in on how best to address the unreasonable risks posed by a chemical's use. After a court finds unreasonable risk and orders EPA to

commence a TSCA section 6(a) rulemaking, EPA is left with a range of regulatory options for eliminating the unreasonable risk, including bans or caps on manufacturing, processing, or distribution of a chemical or relevant uses; and marking, notification, and recordkeeping requirements. 15 U.S.C. § 2605(a)(1)-(7). Before making a final regulatory decision about how to eliminate the unreasonable risk at issue, EPA must allow "interested persons to submit written data, views, and arguments," and must "make all such submissions publicly available." *Id.* § 2605(c)(3).

ACC's worry that EPA will be prevented from "prudently" managing "economic interests and public health," ACC Br. 23, reveals a misunderstanding of the statute. True, Congress has made clear that the determination of whether an "unreasonable risk" exists is to be made "without consideration of costs or other nonrisk factors," 15 U.S.C. § 2620(b)(4)(B)(ii). But when EPA moves on to decide how to eliminate an unreasonable risk under section 6(a), EPA *does* consider "economic consequences of the rule." *Id.* § 2605(c)(2)(A)(iv) (instructing EPA to assess,

among other factors, the regulation's costs and benefits, and its likely

effects on small businesses and technological innovation).

TSCA also allows the court to "permit the [EPA] Administrator to

defer initiating" a petitioned-for section 6(a) rulemaking "[i]f the court

finds that the extent of the risk . . . alleged by the petitioner is less than the

extent of risks to health or the environment" posed by other chemicals EPA

is regulating and if "there are insufficient resources available to [EPA] to

take the action requested by the petitioner." *Id.* § 2620(b)(4)(B)(ii).

In sum, the straitjacketed reading of section 21 that EPA and ACC

proffer contravenes Congress's intent to provide "unusually powerful

procedures for citizens to force EPA's hand." *Trumpeter Swan Soc'y v. EPA*,

774 F.3d 1037, 1039 (D.C. Cir. 2014). When EPA has overlooked chemicals

and chemical uses that present unreasonable risks to health or the

environment, section 21 allows the parties to develop a record before the

trial court on whether a chemical use presents an unreasonable risk. If the

answer is "yes," the court can then assess—again, based on the record that

the parties have built—how that chemical's risks compare to risks from

28

other chemicals for which EPA is conducting rulemaking. This understanding of the scope of section 21 review gives effect to TSCA's text and "overarching purpose . . . to protect the public from chemicals that pose an unreasonable risk to health and the environment." 1-ER-62.

## CONCLUSION

While NRDC takes no position on the district court's findings on unreasonable risk, we respectfully submit that the decision below correctly articulated the scope of section 21 review and the law on Article III standing.

In enacting TSCA, Congress expressly chose to *not* give EPA final say over what chemicals get regulated. Congress further chose not to limit judicial review to a deferential examination of only the petition and EPA's often cursory petition denial (if EPA responds at all). Instead, in section 21, Congress invoked normal civil trial processes, placing the burden on petitioners to show by a preponderance of the evidence in a de novo proceeding that an unreasonable chemical risk exists and that EPA must then conduct a section 6(a) rulemaking proceeding to eliminate that risk.

Once EPA has waived its opportunity to begin a rulemaking proceeding in response to the petition and is called into court, locking unsuccessful petitioners (or both petitioners and EPA) into potentially limited, necessarily written evidence deprives the court of the benefit of live testimony, non-public information in EPA's exclusive possession that could be obtained through discovery, and other vital evidence. This would thwart the purpose of section 21—to safeguard public health and empower members of the public to push a recalcitrant agency forward.

When a lethargic EPA fails to act on an alleged unreasonable risk, Article III allows a plaintiff to challenge that failure so long as the requested relief—here, section 6(a) rulemaking to eliminate the unreasonable risk—would remedy the challenged source of injury, even if other sources of injury also exist.

This Court should affirm the district court's conclusions of law on standing and the scope of judicial review under section 21.

Respectfully submitted,

*/s/ Vivian H.W. Wang*
Vivian H.W. Wang
Natural Resources Defense Council
40 West 20th St.
New York, NY 10011
vwang@nrdc.org
(212) 727-4477

Selena Kyle
Natural Resources Defense Council
20 N. Wacker Dr., Ste. 1600
Chicago, IL 60606
skyle@nrdc.org
(312) 651-7906

Margaret T. Hsieh
Michael E. Wall
Natural Resources Defense Council
111 Sutter St., Floor 21
San Francisco, CA 94104
mhsieh@nrdc.org
mwall@nrdc.org
(415) 875-6135

*Counsel for Amicus Curiae*
November 24, 2025       *Natural Resources Defense Council*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Fed. R. App. P. 29(A)(5) and 32 and 9th Cir. Rule 32-1, because it contains 5,765 words, excluding the portions exempted by Fed. R. App. P. 32(f), as determined by the word-count function of Microsoft 365.

This brief further complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in 14-point Palatino Linotype, a proportionally spaced typeface.

Dated: November 24, 2025    */s/ Vivian H.W. Wang*
         Vivian H.W. Wang

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief of

Amicus Natural Resources Defense Council with the Clerk of the Court for

the United States Court of Appeals for the Ninth Circuit using the Court's

CM/ECF system. I further certify that all parties were served via the

Court's CM/ECF system.


Dated: November 24, 2025                    */s/ Vivian H.W. Wang*
                                            Vivian H.W. Wang