**No. 25-0384**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

FOOD & WATER WATCH; FLUORIDE ACTION NETWORK; MOMS AGAINST FLUORIDATION; AUDREY ADAMS, individually and on behalf of KYLE ADAMS; KRISTIN LAVELLE, individually and on behalf of NEAL LAVELLE; BRENDA STAUDENMAIER, individually and on behalf of KO STAUDENMAIER and HAYDEN STAUDENMAIER;

*Plaintiffs-Appellees*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency;

*Defendants-Appellants*.

---

ON APPEAL FROM A DECISION OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN NO. 3:17-CV-02162-EMC, HONORABLE EDWARD M. CHEN, DISTRICT JUDGE

# APPELLEES' PETITION FOR REHEARING OR REHEARING EN BANC

KAY G. REEVES
WATERS KRAUS PAUL & SIEGEL
3141 Hood Street
Suite 700
Dallas, TX 75219
(800) 226-9880
kreeves@waterskraus.com

MICHAEL CONNETT
SIRI & GLIMSTAD LLP
700 South Flower Street
Suite 1000
Los Angeles, California 90017
(888) 747-4529
mconnett@sirillp.com

*Attorneys for Plaintiffs-Appellees*

## TABLE OF CONTENTS

I. INTRODUCTION AND RULE 40(b) STATEMENT ....................................1

II. PROCEDURAL HISTORY ........................................................................4

III. ARGUMENT...........................................................................................7

A. The Panel's Decision Conflicts with the Ninth Circuit's Rule Against Considering Issues Raised for the First Time on Appeal ........7

B. The Panel's Expansive Interpretation of the Party Presentation Principle Conflicts with U.S. Supreme Court Precedent ......................9

C. The Panel's Expansive Application of Party Presentation Presents Questions of Exceptional Importance by Exposing Long-Recognized Case-Management Tools to Unpreserved Challenges on Appeal.......13

D. Panel Rehearing Is Warranted Because the Panel's Decision Conflicts with the Factual Record and Is Internally Inconsistent .......15

1. The Panel Overlooked/Misapprehended the Factual Record ...15

2. The Panel's Decision Is Internally Inconsistent .......................17

IV. CONCLUSION.........................................................................................17

CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING........18

# TABLE OF AUTHORITIES

## Cases

*B.B. by and through Boyle v. Capistrano Unified Sch. Dist.*,
169 F.4th 953 (9th Cir. 2026) ........................................................... 2, 7

*Baccei v. United States*,
632 F.3d 1140 (9th Cir. 2011) ........................................................... 2, 7

*Bolker v. Comm'r*,
760 F.2d 1039 (9th Cir. 1985) ........................................................... 7, 8

*Burlington Northern & Santa Fe Railway Co. v. United States*,
556 U.S. 599 (2009) ........................................................... 10, 11, 14

*Castro v. United States*,
540 U.S. 375 (2003) ........................................................... 11

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020) ........................................................... 14

*Colorado v. United States EPA*,
989 F.3d 874 (10th Cir. 2021) ........................................................... 16

*Doyle v. OneWest Bank, N.A.*,
No. CV 13-05951, 2015 U.S. Dist. LEXIS 100526
(C.D. Cal. May 21, 2015) ........................................................... 14

*Duncan v. Bonta*,
133 F.4th 852 (9th Cir. 2025) ........................................................... 12

*Greenlaw v. United States*,
554 U.S. 237 (2008) ........................................................... 2, 9, 10

*In re PG&E Corp. Sec. Litig.*,
100 F.4th 1076 (9th Cir. 2024) ........................................................... 3

*Keith v. Volpe,*
858 F.2d 467 (9th Cir. 1988) ........................................................... 14

*Landis v. North American Co.,*
299 U.S. 248 (1936) ........................................................... 13

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ....................3, 13

*Margolin v. National Association of Immigration Judges*,
608 U.S. 339 (2026)....................2, 9

*McNeil v. Wisconsin*,
501 U.S. 171 (1991)....................12

*Powerex Corp. v. Reliant Energy Services, Inc.*,
2007 WL 543057 (2007) ....................14

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025)....................2, 8

*United States v. Cortez-Nieto*,
43 F.4th 1034 (10th Cir. 2022)....................16

*United States v. Foistner*,
Nos. 22-1420, 22-1619, 2024 WL 3413644
(1st Cir. July 15, 2024) ....................14

*United States v. Garcia*,
115 F.4th 1002 (9th Cir. 2024)....................12

*United States v. Hymas*,
780 F.3d 1285 (9th Cir. 2015) .................... 2, 7, 8

*United States v. Perez-Garcia*,
96 F.4th 1166 (9th Cir. 2024)....................12

*United States v. Powell*,
467 F. Supp. 3d 360 (E.D. Va. 2020) ....................8

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020).................... passim

*Zubik v. Burwell,*
578 U.S. 901 (2016)....................12

**Statutes**

15 U.S.C. §§2601-2692 ......................................................................1, 4

**Rules**

Fed. R. Civ. P. 40(b)(1)......................................................................3

Fed. R. Civ. P. 40(b)(2)(A) ......................................................................2

Fed. R. Civ. P. 40(b)(2)(B) ......................................................................2

Fed. R. Civ. P. 40(b)(2)(D) ......................................................................3

Fed. R. Evid. 201 ......................................................................14

Fed. R. Evid. 611 ......................................................................14

Fed. R. Evid. 614(a) ......................................................................14

Fed. R. Evid. 614(b) ......................................................................14

Fed. R. Evid. 706(a) ......................................................................14

## I. INTRODUCTION AND RULE 40(b) STATEMENT

This Petition addresses a Panel decision that vacated a judgment rendered after over seven years of litigation and two phases of trial on a ground that the Appellants ("EPA") never raised in the district court. Dkt. 87. On appeal, EPA did not challenge the district court's findings that the addition of fluoridation chemicals to drinking water presents an unreasonable risk under the Toxic Substances Control Act ("TSCA"). Instead, EPA raised a new argument, which the Panel accepted, that the district court violated the party presentation principle by staying the case after the first phase of trial to await a pending government study that EPA had called "indisputably central" to the case. 6-ER-1164. Plaintiffs-Appellees ("Plaintiffs") respectfully petition for rehearing en banc or, in the alternative, panel rehearing.

En banc review is necessary because the Panel's decision (1) conflicts with Ninth Circuit precedent on waiver and forfeiture of issues first raised on appeal; (2) conflicts with Supreme Court precedent on the scope of the party presentation principle; and (3) advances an expansive interpretation of party presentation that will chill ordinary, well-accepted case-management practices in complex cases, including holding proceedings in abeyance and using the *sua sponte* tools provided by the Federal Rules of Evidence to develop the factual record. Panel rehearing is independently warranted because the memorandum rests on factual

characterizations that conflict with the record and because the opinion is internally inconsistent.

***Rule 40(b)(2)(A).*** The Panel's decision conflicts with Ninth Circuit precedent by disregarding the long-settled rule that an appellate court does not consider an issue raised for the first time on appeal absent one of three narrow exceptions—none of which the Panel invoked, and none of which applies. *B.B. by and through Boyle v. Capistrano Unified Sch. Dist.*, 169 F.4th 953, 966 n.12 (9th Cir. 2026); *United States v. Hymas*, 780 F.3d 1285, 1294 (9th Cir. 2015); *Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011). EPA never raised the party presentation principle in the district court, even though it learned of the conduct it now challenges *years* before judgment was entered. The only authority the Panel cited for considering EPA's argument, *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1054–55 (9th Cir. 2025), involved a litigant ambushed by a ground the district court *first raised in its dismissal order*—a circumstance absent here.

***Rule 40(b)(2)(B).*** The Panel's decision conflicts with the Supreme Court's precedent on party presentation which restricts courts from deciding *issues* the parties did not present. *Margolin v. National Association of Immigration Judges*, 608 U.S. 339, 342 (2026); *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Here, the district court introduced no new issue; instead, it deployed a case management procedure

(a stay) to help resolve issues *the parties* had presented. The Panel disregarded this dispositive distinction based on dicta that finds no support in any Supreme Court holding, including the *Sineneng-Smith* decision on which it primarily relies.

***Rule 40(b)(2)(D).*** Although unpublished, the Panel's memorandum casts doubt on a district court's *sua sponte* power to use long-settled tools of case management to manage complex cases, including the power to stay a case pending resolution of administrative or other independent proceedings. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979); *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024). Under the Panel's approach, years of judicial effort can be set aside on the basis of a single *sua sponte* case-management decision, even when the complaining party never raised the objection below and even when the decision did not prejudice that party or produce an incorrect result. This absolutist approach will chill other district courts from exercising the broad and inherent authority that is essential to the orderly management of litigation.

***Rule 40(b)(1).*** Panel rehearing is independently warranted because the Panel overlooked and/or misapprehended the factual record and issued an internally contradictory ruling. First, the Panel faulted the district court for having "determined, on its own" that a pending government review was relevant and important. Dkt. 87 at 7. But it was *the parties*, not the court, that identified the

review as a critical piece of evidence. For its part, EPA called the review "indisputably central" to the case (6-ER-1164:2-3) and cited its pending status during the first phase of trial to argue that it was premature to render a decision on the science (2-SER-342-43; 3-SER-518-19). Second, the Panel's decision is internally contradictory. The Panel concluded that the district court did not err by allowing amendment of the standing evidence after the first phase of trial. Dkt. 87 at 5. Yet, the Panel ordered the district court to issue a new decision "based solely on the first trial record" (*id.* at 7), which will bar the district court from considering the standing evidence that the Panel agreed it could lawfully consider.

## II. PROCEDURAL HISTORY

In November 2016, Plaintiffs petitioned EPA under Section 21 of TSCA to address the risks posed by the addition of fluoridation chemicals to drinking water. 2-ER-207-09. EPA denied the petition in February 2017, and Plaintiffs filed suit.

**The Draft NTP review.** As discovery neared its close, the National Toxicology Program ("NTP")[1] released a draft of its systematic review of fluoride's neurodevelopmental toxicity. 6-ER-1162. EPA moved to extend discovery so that it could rely on the draft, telling the court that "the content and conclusions of the NTP Monograph are indisputably central to the expert opinions

[1] The NTP is headquartered at the National Institute of Environmental Health Sciences, which "is one of the premier environmental health sciences research institutions in the world." 4-SER-822-23.

in this matter," that the review is "conducted in the manner consistent with requirements of TSCA," and that "this litigation would benefit substantially" from additional expert discovery to consider it. 6-ER-1164.[2] The court denied the extension. 6-ER-1150-52. After further briefing, the parties agreed to not introduce a copy of the draft NTP report into evidence. 6-ER-1143-49, 5-ER-1092.

**The First Phase of Trial.** Although the draft NTP report was not introduced as an exhibit at the first trial, the NTP figured prominently in EPA's trial presentation. EPA showcased NTP's state-of-the-art systematic review methods as the model Plaintiffs should have followed to establish a credible hazard under EPA's standards. Dkt. 57 at 14 n.10; 2-SER-412-51. EPA also repeatedly invoked the pending completion of the NTP report as a reason for the court to stay its hand. 2-SER-342-43; 3-SER-518-19. It told the court that, "simultaneous with this trial," the NTP was continuing its review, which—when finalized—would reach "hazard conclusions in a manner that is consistent with the state of the science" (3-SER-518:19-24) and would help answer "whether neurotoxicity should be added to the pile of false alarms and debunked theories" (2-SER-342-43). EPA thus urged "the

[2] EPA reiterated this assessment later in the litigation, telling the court that "NTP's review is of *unquestionable relevance and importance* to inform a decision whether the practice of community water fluoridation presents an unreasonable risk of injury to human health." 3-SER-612:13-15 (emphasis added).

Court to let the science advance."[3] 3-SER-518:9; *see also* 2-SER-343 ("[T]oday is not the day for the Court to intervene. We're asking the Court for prudence to allow the evolving science to play out.").

**The Stay.** At the close of the first phase of trial, the court raised the possibility of a stay, noting that the NTP review was "a significant study" and "an important piece of evidence." 1-ER-29:16-20.[4] EPA's counsel responded that EPA had "anticipated" the question. 1-ER-33:7. The court then held a further hearing on August 6, 2020, received the parties' input, and entered the stay. 4-ER-738-77, 1-ER-23-27. EPA objected to the stay at the August 2020 hearing and filed a motion that sought relief from it. 4-ER-768:3-4; 5-ER-979-86. At no point, however, did EPA ever assert, in form or in substance, that the stay violated the party presentation principle. *See, e.g.*, Dkt. 57 at 15-16; 4-ER-738-77; 5-ER-943-51; 5-ER-979-86.

---

[3] Consistent with this, EPA later told the district court, "EPA wants . . . what you want also. It's to assess the evidence with NTP's final conclusion." 3-SER-600.

[4] The district court provided additional reasons for the stay, including that the stay would allow supplementation of the record to address standing issues (1-ER-34:18-24), would allow for consideration of other pending studies that the parties identified during trial (1-ER-30:22-25), and would allow EPA to use the correct standard to assess the risk. *See, e.g.*, 1-ER-30:5-9 (stating that EPA had not used "the proper standard"); 1-ER-36:20-22 (explaining that a stay would give EPA an opportunity to "apply the proper standard").

## III. ARGUMENT

### A. The Panel's Decision Conflicts with the Ninth Circuit's Rule Against Considering Issues Raised for the First Time on Appeal

The Panel's decision conflicts with this Court's longstanding rule that it does not consider issues that a party presents for the first time on appeal. *Capistrano*, 169 F.4th at 966, n. 12 ("[T]he general rule . . . [is] that a federal appellate court does not consider an issue not passed upon below"). This Court recognizes only three limited exceptions to this rule: "(1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law." *Baccei*, 632 F.3d at 1149; *accord Hymas*, 780 F.3d at 1294; *Bolker v. Comm'r*, 760 F.2d 1039, 1042–43 (9th Cir. 1985). The Panel made no attempt to explain how any of these limited exceptions apply, nor could it.

First, holding EPA to its choices works no injustice. EPA was not ambushed. It argued before and during trial about the importance of considering the NTP's findings (6-ER-1164; 2-SER-342-43; 3-SER-518-19), it "anticipated" the stay (1-ER-33), and objected to it on grounds that the court rejected and which EPA does not challenge (5-ER-979-86).

Second, no change in law occurred. The primary case on which EPA relies (*Sineneng-Smith*) predates the stay. In fact, several months before the stay, EPA's counsel (the Department of Justice) cited *Sineneng-Smith* in a party presentation

objection to a district court ruling in a separate case. *See United States v. Powell*, 467 F. Supp. 3d 360, 383 n.13 (E.D. Va. 2020).

Third, the issue is not purely legal. Instead, it "requires fact-finding" about what occurred in the lengthy litigation below. *Hymas*, 780 F.3d at 1294; *accord Bolker*. 760 F.2d 1039, 1042–43 (declining to consider government's new theory because it required "detailed factual inquiry"). Indeed, the Panel's holding here rests on contested factual premises. *See infra* Part III.D.1.

Instead of addressing these three exceptions, the Panel cited *Trader Joe's*, 150 F.4th at 1054-55, where this Court considered a party presentation first raised on appeal. Dkt. 87 at 3 n.1. But *Trader Joe's* did not license an indiscriminate departure from forfeiture principles; it considered party presentation on appeal because doing so was necessary to prevent an injustice, *which is one of the three established exceptions*. Specifically, the district court in *Trader Joe's* dismissed the case on a ground no party had raised, so appeal was the plaintiff's *first opportunity* to object. The plaintiff would have been prejudiced had this Court *not* considered the issue. *See Trader Joe's*, 150 F.4th at 1054–55 (noting the prejudice of "losing a case on the basis of an argument to which [a party] had no chance to respond.'" (citation omitted)). Here, by contrast, EPA had ample opportunity to raise its party presentation objection with the district court but chose not to do so.

### B. The Panel's Expansive Interpretation of the Party Presentation Principle Conflicts with U.S. Supreme Court Precedent

The Panel embraced an expansive view of the party presentation principle that cannot be squared with the Supreme Court's own application of it. In *Greenlaw* and again in *Margolin*, the Court explained that the principle directs courts to "rely on the parties to frame the *issues* for decision," so that "*points* not argued will not be considered," and that courts accordingly decide "only *the questions* presented." *Margolin*, 608 U.S. at 342 (emphasis added); *Greenlaw*, 554 U.S. at 243. Measured against this standard, the Panel's holding cannot stand. The district court did not introduce a single new issue into the case. It decided the two questions the parties had framed from the outset: whether Plaintiffs have standing, and whether adding fluoridation chemicals to drinking water presents an unreasonable risk.

Much of the Panel's decision rests on *United States v. Sineneng-Smith*, 590 U.S. 371 (2020). But the conduct of the appeals court there is not remotely analogous to the conduct of the district court here. In *Sineneng-Smith*, the appeals court raised *new legal issues* that had never been raised by the parties, identified and invited three amici to file briefs and provide oral argument on these issues, and decided the case on the grounds briefed by said amici. *Id.* at 372, 374-5. Here, by contrast, the district court did not raise any new issues, it did not recruit freelance amici to pursue new legal arguments, and it did not base its decisions on arguments

made by non-parties. Instead, the district court—serving as trier-of-fact in a bench trial—stayed the case to await publication of a government report that the EPA itself had cited as "indisputably central" to resolving the dispute. *See* 6-ER-1164. These circumstances bear little resemblance to *Sineneng-Smith*.

*Burlington Northern & Santa Fe Railway Co. v. United States*, 556 U.S. 599 (2009), confirms that a trial court's active role in shaping the *factual basis* for its decision does not offend the party presentation principle. There, after a *bench trial* in an environmental remediation case, the district court apportioned liability among the responsible defendants. It did so on the basis of "*the Court's determination*" of which chemicals actually required remediation and what percentage of the harm each defendant caused. *Id.* at 606, 615–16, 622 (Ginsburg, J., dissenting) (emphasis added). The court made that determination without the parties' help. The parties had "fail[ed] to assist the court in linking the evidence supporting apportionment to the proper allocation of liability," which left the court to "independently . . . perform [an] equitable apportionment analysis." *Id.* This is far more inquisitorial than anything the district court is claimed to have done here. Yet, the Supreme Court—which decided *Burlington Northern* only one year after *Greenlaw*—affirmed the apportionment without any mention of party presentation. Only Justice Ginsburg raised it, in dissent. Justice Ginsburg praised the trial court's "heroic" effort and went no further than calling it "*questionable*" whether the court

"should have pursued the matter *sua sponte*." *Id.* at 622 (emphasis added). Even then, Justice Ginsburg would have remanded only because the government did not have "a fair opportunity to respond."[5] *Id.* at 623.

Against this contradictory authority, the Panel relies on *Sineneng-Smith*'s citation to Justice Scalia's concurrence in *Castro v. United States*, 540 U.S. 375, 386 (2003), for its statement that "[o]ur system 'is designed around the premise that the parties know what is best for them, and are responsible for advancing *the facts* and arguments entitling them to relief.'" *Sineneng-Smith* at 375-6 (emphasis added). That statement is not the holding of *Sineneng-Smith* or of *Castro*.[6] In fact, *Sineneng-Smith* specifically endorsed prior cases where the Supreme Court itself had influenced the development of the factual record. For example, in *Zubik v. Burwell* (a case cited in *Sineneng-Smith*'s Addendum), the Court ordered the parties to submit extensive additional briefing on factual issues. *Zubik,* 578 U.S.

---

[5] As discussed above, EPA had ample opportunity to respond to the district court's conduct at issue here.

[6] In *Castro*, the Court held that district courts may *sua sponte* "recharacterize" a pro se criminal defendant's motion for new trial as a habeas claim. 540 U.S. at 377. Justice Scalia did not dissent from that holding, even though it clearly decided what was best for the defendant. If the Scalia concurrence didn't change the outcome of *Castro* or *Burlington Northern* (where Justice Ginsburg cited it in dissent), it cannot carry the weight of the Panel's decision here.

901 (2016). Despite this, *Sineneng-Smith* ruled out any party presentation problem.[7] 590 U.S. at 376, 381, and n. 4.

The Panel also cites *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991), a case which did not turn on the party presentation principle. The footnote from *McNeil* merely responds to the dissent's accusation that the majority had revealed "a preference for an inquisitorial system of justice," while going on to explain the difference between inquisitorial and adversarial systems—pure dicta and not the issue here. *McNeil* at 181, n. 2.

Nor does this Court's opinion in *Duncan v. Bonta*, 133 F.4th 852, 886–90 (9th Cir. 2025)—a Second Amendment case that did not turn on the party presentation principle—support the Panel's decision. The Panel cites to the concurrence there, not the holding. The *Duncan* concurrence criticized the dissenting judge's decision to use self-created demonstrative aides to explain the use and handling of handguns, noting that "the use of these demonstratives affronts party presentation principles and flouts the rules that govern the introduction of

---

[7] This Court has followed the Supreme Court's path in *United States v. Perez-Garcia*, 96 F.4th 1166, 1187 (9th Cir. 2024) and *United States v. Garcia*, 115 F.4th 1002, 1007 (9th Cir. 2024) (denying en banc review). In upholding the judgment, this Court relied in part on a law review article and newspaper articles as sources of facts—materials not presented by the parties. *Perez-Garcia*, 96 F.4th at 1175, 1178, 1181, 1187; *Garcia*, 115 F.4th 1002, 1005 (9th Cir. 2024) (Sanchez, J., concurring) ("Where the [panel] opinion cited other historical sources, it was appropriate to do so."). The dissent argued—unsuccessfully—that "the panel improperly helped the government meet its burden of justification by supplementing the historical record." 115 F.4th at 1015.

evidence." *Duncan*, 133 F.4th at 884, 888. This is a far cry from what happened here, where the district court—serving as *trier-of-fact* in a *bench trial*—took steps to ensure that a government report that EPA had identified as "indisputably central" to the dispute could be included in the record.

### C. The Panel's Expansive Application of Party Presentation Presents Questions of Exceptional Importance by Exposing Long-Recognized Case-Management Tools to Unpreserved Challenges on Appeal

According to the Panel, the district court's *sua sponte* exercise of lawful authority violated the party presentation principle because it did not "respect the decisions made by the parties in the case." Dkt. 87 at 7. If this reading is correct, it adds a chilling level of uncertainty to what was previously the broad and inherent domain of the district court. This is especially so if the complaining party need not even raise the objection until the appeal.

The district court's power to stay cases has been settled for 90 years, when the Supreme Court ruled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936). This Court's opinion in *Leyva* followed that rule, holding that a district court is authorized to "enter a stay . . . pending resolution of independent proceedings which bear upon the case," including administrative proceedings. *Leyva,* 593 F.2d at 863-64. And this Court, as with others, has issued such stays *sua sponte. Powerex Corp. v.*

*Reliant Energy Services, Inc.*, 2007 WL 543057, 59 (2007); *Doyle v. OneWest Bank, N.A.*, No. CV 13-05951, 2015 U.S. Dist. LEXIS 100526, at *9 (C.D. Cal. May 21, 2015) (citing cases). This longstanding authority earned no comment from the Panel.

The same is true of the district courts' ability to impact the factual record. The Federal Rules of Evidence expressly authorize district courts to *sua sponte* take judicial notice of certain types of facts (Fed. R. Evid. 201), control the mode and order in which evidence is presented (Fed. R. Evid. 611), call witnesses (Fed. R. Evid. 614(a)), examine and elicit facts from witnesses (Fed. R. Evid. 614(b)), and appoint experts (Fed. R. Evid. 706(a)). This power is particularly appropriate in the context of a bench trial. *See generally Burlington Northern*, 556 U.S. 599.[8] Consistent with this authority, the Ninth Circuit has held that district courts have the *sua sponte* authority to reopen the evidentiary record and request supplemental briefing. *City of Oakland v. BP PLC*, 969 F.3d 895, 900 (9th Cir. 2020); *Keith v. Volpe,* 858 F.2d 467, 478 (9th Cir. 1988).

Left uncorrected, the Panel's approach would allow a party to challenge, for the first time on appeal, a district court's use of long-recognized case-management

---

[8] *See also United States v. Foistner*, Nos. 22-1420, 22-1619, 2024 WL 3413644 at *2 (1st Cir. July 15, 2024) (explaining that a judge "is not a mere umpire" but rather "'the governor of the trial for the purpose of assuring its proper conduct[] and has a perfect right — albeit a right that should be exercised with care — to participate actively in the trial proper.").

tools, including stays, judicial notice, and the *sua sponte* examination of witnesses. District courts would then face the prospect that years of work could be set aside on the basis of a *sua sponte* decision the losing party had not endorsed. These questions, which arise from the Panel's decision, are of exceptional importance to the orderly administration of complex litigation.

### D. Panel Rehearing Is Warranted Because the Panel's Decision Conflicts with the Factual Record and Is Internally Inconsistent

#### *1. The Panel Overlooked/Misapprehended the Factual Record*

The Panel's opinion rests on the incorrect premise that "the district court rejected the parties' presentation of the case and determined, on its own, that the NTP monograph was relevant and important." Dkt. 87 at 7. As the record shows, it was the *parties*—not the district court—that identified the NTP report's relevance and importance, and it was *EPA* who suggested that some delay would allow for a decision to be made on the best scientific evidence. The EPA told the district court, *prior to the stay*, that the NTP's findings "are indisputably central" to the case. 6-ER-1164 (emphases added). Further, EPA's presentation at trial repeatedly identified the NTP's pending final report as a reason the court should "let the science advance," warning that NTP's authoritative analysis might "debunk[]" the concerns about fluoride neurotoxicity as a "false alarm[]." 2-SER-342-343; 3-SER-518-19. The district court's decision to enter the stay in order to consider NTP's final report was therefore not a "reject[ion] of the parties' presentation" (Dkt. 87 at

7), but an *endorsement* of it, even if the mechanism it ultimately chose (a stay) was different from what the parties preferred.[9]

The Panel's opinion is similarly mistaken in its accounting of the circumstances that led the district court to later lift the stay. The opinion states that the district court "declined" the parties' joint request "to decide the merits of the case based only on the first trial record." Dkt 87 at 6. However, the district court lifted the stay by *granting Plaintiffs' motion* (5-ER-837-42) which *specifically requested that the court consider NTP's findings* (5-ER-883, 896-97). While Plaintiffs later agreed to not object if the court took the case out of abeyance to rule on the first trial record (5-ER-854), their motion explicitly asked the district court to consider the NTP's findings (5-ER-883, 896-97), which is the relief the district court granted.

Rehearing is warranted, therefore, because the Panel's decision rests on factual premises—including why the district court entered *and* later lifted the stay—that are at odds with the record.

---

[9] *See United States v. Cortez-Nieto*, 43 F.4th 1034, 1052 (10th Cir. 2022) (explaining that the party presentation principle "does not preclude a court from resolving a presented issue in a way not proposed by any party"); *Colorado v. United States EPA*, 989 F.3d 874, 885-86 (10th Cir. 2021) (finding no violation of party presentation where, *inter alia*, "the district court did not cut [its] theory of harm out of whole cloth").

### *2. The Panel's Decision Is Internally Inconsistent*

Rehearing is also warranted because the Panel's opinion is internally inconsistent. On one hand, the Panel expressly held that the district court did **not** err—and did not violate the party presentation principle—when it allowed the Plaintiffs to amend their evidence on standing following the first trial. Dkt. 87. at 5 ("The district court's decision to invite amendment on standing did not violate the party presentation principle." (citation omitted)). Yet, later in its opinion, the Panel instructed the district court to render a decision "based solely on the first trial record." *Id*. at 7. These directives cannot be reconciled. The Panel cannot both bless the standing amendment and order the district court to disregard the evidence that the amendment produced. At a *minimum*, rehearing is warranted to clarify and confirm that the district court can incorporate the post-trial standing evidence that the Panel agreed was lawful to have considered.

## IV. CONCLUSION

For these reasons, the Court should grant rehearing en banc, or alternatively grant a panel rehearing.

RESPECTFULLY SUBMITTED this 9th day of November, 2026.

By: */s/ Michael Connett*
Michael Connett
Siri & Glimstad LLP
700 S Flower Street, Suite 1000
Los Angeles, CA 90017
Email: mconnett@sirillp.com

## CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING

I am the attorney of record for this matter. I certify that pursuant to Circuit Rule 40-1, APPELLEES' PETITION FOR REHEARING OR REHEARING EN BANC has been prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and (c)(2), and contains 4,141 words.

Dated: November 9, 2026

*/s/ Michael Connett*
Michael Connett